22-1108 and we'll hear from the appellant whenever you're ready. Good morning. Are you already over there? Okay, sorry Good morning, David Lichtenstein, appearing for the appellant, Penny Landon. May it please the court. Pretext evidence can be used to raise an inference of discrimination for purposes of the prima facie case. That's a settled question, not just in this district under the Wells v. Department of Transportation case, but everywhere under the Reeves v. Sanderson plumbing case. The single most important fact in this case is one that bears not only on the pretext issue, but it's one that raises an inference of discrimination. In both the two cases you've just cited, weren't those cases where the district court first concluded there was a prima facie case and the case then proceeded to the usual three-part McDonnell Douglas procedure and that's why pretext evidence was admissible because they were to that point in the case. But both cases did observe that pretext evidence could be used to show the prima facie case. Even though the prima facie case issue was already achieved. Yeah. Okay, just wanted to be clear. Sure. But the ultimate issue for purposes of the prima facie case is do the facts raise an inference of discrimination. The single most important fact I think in this case is that Ms. Landon was terminated at a time when Delta V had a sales staff of three people and the two men were detained. Delta V principally took the position that it terminated her because she was not making sales and yet she had just made a sale that resulted in $20,000 in revenue to the company and she had told the CEO, Mr. Winston, that she had made that sale. Meanwhile, no one else in the company for several months had made sales of more than $100. Well, she hadn't made a sale because she'd ever because the under the agreement the sale is deemed completed when the product is shipped and it's been paid. And in those two sales were never shipped. They were never paid, correct? I don't believe that's true. They were shipped and she was paid after she was terminated. She received commissions on those sales. Well, that's I mean, that's that's sort of my point is that it was it wasn't shipped and it wasn't paid until after January, until after she had been terminated, correct? Or am I mistaken on that? No, that's I mean, that's correct. This is a sign of performance. I mean, she has made these sales. No one else is making sales. But I thought your point was let's look at the facts at the time that she was terminated and to Judge Bacharach's point, the facts at the time she was terminated, those sales had not been finalized. Correct? Well, that's that's correct. But but she has certainly set the wheels in motion with those sales. I don't know if anyone else had done that. And she told Mr. Winston that she had just made those sales and she was, of course, working out of the matter. She was working diligently on bringing in a couple of major contracts with two large hotel chains. That was part of her responsibilities under her offer letter. Meanwhile, part of the problem with everyone making sales was there wasn't sufficient product to fill orders. And she had even not been notified of a meeting in mid-December where this topic had not had been brought up. So and she was also working on repairing the company's sales force. With regard to the shortage of product, as I understand it, Mr. LaBarbera says in his affidavit that once when she first started that there was a shortage, that there was an inability to ship product for one sale. And then there was another incident in December where there was one reference to the inadequate product to ship to one customer. But in your brief, you make it sound like, well, for the entire five-month period there was this, they never had any products for her to sell. And so it wasn't her inability to sell product. It was the shortage of product. I don't know that that's really a fair inference if there's only two incidents of two isolated sales where they were not able to ship product. Am I mistaken about the ruling? I, I, yeah, I would correct the, your Honor, on that point. And one of the attachments to her, her declaration is an email which lists what happened at the December 14th meeting. And you can see from the notes, both the agenda for the meeting and the notes, that there are several properties where there's a problem with product. And, but by the end, it was August, September, October, November. Was there any evidence of an inability to ship product during those four months? Well, I think that's what Mr. LaBarbera's affidavit is about. I thought his, his, I thought his affidavit was in, in the plaintiff's very first month. Are you sure that Mr. LaBarbera talks about that four-month window? I may be wrong. Well, yeah. I mean, he's, he's with the company for approximately three months, and he's, my recollection is that his declaration talks about it being a problem through the entire period. And certainly you can tell from the December memo that I just referred to that there was a problem. Okay. All along. When did he leave the company? He left on December 3rd of 2018. And he was there for three months? Correct. But he's fired because Winston's unhappy with LaBarbera's inadequate sales, right? According to Mr. Weehy. I think it was, it was general performance that Mr. Winston cited as the reason for terminating Mr. LaBarbera. But, of course, this case is about Ms. Landon, not about Mr. Weehy. Well, it is about Ms. Landon, except you're relying on Mr. LaBarbera for the prima facie case, at least in part, to say, well, before he was terminated, he said she was doing a dandy job. Well, it's just an odd situation with the decision-maker. Winston had fired the guy, LaBarbera, for inadequate sales, which is exactly, by the way, the reason that he says that he had fired Ms. Landon. So it is a little bit of a, of an interesting confluence. Well, except that Ms. Landon is a salesperson, and she is similarly situated to the other two sales gentlemen. Okay. So, Mr. LaBarbera has more of a management role, and I think that's what Mr. Winston was concerned about. And the favoritism that was given to the two salesmen is also a fact that is pretty important for showing the prima facie case. How do you deal with, on page 282 of the appendix, where Mr. Winston says that, I would have given, I, Mr. Winston, would have given Ms. Landon more time, except she was, you know, shunning these repeated requests, I think, from Mr. Heaton, or whatever his name is, for when he was trying to get the contact information for the fellow at Hilton, and he says, well, I would have given her more time, but she wasn't, you know, sharing information. She was, you know, she was being, you know, she was being obstinate about that, and that's the reason that he didn't give her more time, even if she were otherwise similarly situated to Mr. Watts. Well, and I would point out that the district court never reached that issue. But we have to review it to know. I understand. I understand, of course. But, Mr. Winston admitted that the primary reason that he terminated Ms. Landon was that she wasn't making sales, and you know, certainly the fact that, if it's true, and we don't know, because we don't have testimony or declarations from Mr. Heaton, or the other gentleman who was sending her emails, we don't really know how critical an issue it was that Ms. Landon wasn't sharing that information. But isn't it undisputed that they kept asking her for this specific information, and she did not provide it? That's correct, but we don't know the reason. We don't know if it's credible that it was truly urgent information. Why would that matter? Well, I'm sorry. Well, I'm just asking, why would it matter if it was critical? Mr. Winston says, look, this is, you know, Hilton's a big deal. I mean, you're the person, you know, but this this preferred status, you know, for Hilton is a big deal, and you say, well, Ms. Landon was working on it. Well, Mr. Heaton is saying, you know, yeah, you're out for ten days. We want the information. So whether it's critical or not, why is it important? If it wasn't important, even if Mr. Heaton was just wanting it to want it, why would it be relevant to Mr. Winston's pretext that he is crediting Mr. Heaton's repeated inability to get a phone number or an email address from Ms. Landon? So, does that make sense? I guess yes and no would be my thinking on it. We don't know if it's critical. You know, we, you have to wonder because there were other sources of other ways that Mr. Heaton and the company could get hold of these people. From her private email? Well, I thought the information was not stored where it was supposed to be. It was, I thought she acknowledged that it was on her personal server. Yes, but she never found out whether it was stored in Salesforce or not because she was terminated before she could find that out. So, you know, it really isn't established that they truly weren't able to reach these people that they say was important to reach. So, what evidence do we look at on the prima facie case for an inference of sex discrimination? Well, again, of course, that she's let go and the other two gentlemen are... Okay, that's number one. What's number two? The fact that Mr. LoBarbera told or was told by Mr. Weehy at a time when Mr. Weehy was acting as his supervisor to put Watts-Quinston on a fast track. Watts-Quinston is scheduling sales calls and overseeing sales calls. They're sending him to the Virginia headquarters of Hilton at a time when Ms. Landon historically had been the one with the contacts at Hilton and had been working with the corporate people at Hilton. The company was sending both Watts-Quinston and Paul Madabong on sales calls with Mr. LoBarbera and Ms. Winston when historically they had never triple-staffed these sales calls. And, you know, I find it really interesting the way the district court resolved this issue of whether the three people were truly similarly situated. I think it... It's a genuine issue of fact of whether their level of experience and whether the value of their experience was comparable to Ms. Landon's or not. And the court just resolves that by saying, well, it's just plain not comparable. What does the record indicate as to when Ms. Landon came on to the radar of Mr. Winston for conduct that might justify termination? Well, there are differing... differing inferences that could be drawn. Well, what is the evidence from which you draw an inference as to when she was on his radar? Well, I think really at the time of her termination, I think that's the first time it becomes apparent that she's going to be terminated. In mid-December... So that's long after Watts and the other fellow had been hired, correct? Well, you could say it's long after. I mean, Mr. Vanderbilt was hired in late November. Watts and Winston was hired... Well, you're taking the position that Watts and this other fellow really were hired to replace her. Isn't that your... Well... ...potential claim? I think that and just that they, you know, when it came time to terminate someone, Ms. Landon was the one that's terminated and not replaced, by the way. But Mr. Winston had also told Ms. Landon in mid-December that she wasn't going to be terminated. And that's when she tells him, I've just, you know, I've just secured these two sales. So... Is there any evidence that Mr. Winston, who's the decision-maker here, hired these two gentlemen in anticipation of firing your client? Well, I think you have to look at all the circumstances, but I think the fact that almost immediately, Watts-Winston is again given these responsibilities that used to be Ms. Landon's, that he's suddenly again scheduling and overseeing sales calls, going to Hilton's corporate headquarters. These bespeak an attempt on the part of the company. But again, when you go to the end, where she's terminated, again, primarily because she's not being... She's purportedly not making sales, when in fact she has just, you know, at least begun the process of making a sale through, you know, through her own contacts. Wouldn't that... In your answer to Judge Briscoe, wouldn't that preclude liability on your retaliation claim? After all, if he had... hired Mr. Watts in November to replace Ms. Landon, your theory on retaliation is it wasn't until December in which Ms. Bell told Mr. Winston about Ms. Landon's complaint against Mr. Weehy. Well, if Mr. Winston had already concocted the plan to terminate her, well, he obviously didn't terminate her, decide to terminate her in November based on the stuff that he was going to learn a month later. Now, I have to agree, but it's an alternative theory that if in fact he had not hired the other two to replace her, then that decision resulted from retaliation as a result of that meeting between Mr. Weehy and Mr. Winston in December. Thank you. Thank you. May it please the court. Good morning. Good morning. My name is Brett Wendt, and I'm here on behalf of the appellees in this matter. I want to jump right into a few things that this appellee stated by my friends on the other side. The first of which is this notion that these two male individuals were hired to replace Ms. Landon, of which there's absolutely no evidence on the record of that. More importantly, Mr. Watts Winston was hired in November of 2018 to replace Ms. Ferlito, Ms. Landon's former boss, who quit in September of 2018, replacing her. Additionally, Mr. Monabank, the other male, replaced Ms. Pasquale, who quit in October of 2018. He started in December of 2018. These individuals weren't hired to replace Ms. Landon. They were simply hired to replace people that had quit. But that's your theory of the evidence. I mean, isn't it, viewing the evidence on why it's most favorable to the plaintiff, why isn't it a legitimate inference that that these two individuals were hired in anticipation of Ms. Landon being terminated? Because even taking the evidence in the light most favorable to the plaintiff, Your Honor, the simple fact that there were positions that were available due to no fault of Mr. Winston or the company itself that were replaced by men don't have a self-deriving inference of discrimination sufficient to meet the element of the third element of the test. I would add that the argument that these gentlemen were treated somewhat differently or given different treatment is likewise misplaced. Again, they replaced individuals who had those roles and those responsibilities. It's also critical to note that Ms. Landon was a regional salesperson. She was housed here in Colorado. Mr. Batuangang was hired to work on the West Coast, of which Ms. Landon said she thought it was a great business idea. Mr. Watts-Winston was working on the East Coast, which is one of the reasons he went to Hilton, which is based in Virginia. And in spite of the fact that Ms. Landon claimed she had all these contacts, she was being misfavorably treated, and that she was being shut out, why does that explain why she hadn't had a sale since August 7, 2018, if she really had all these contacts and was making headway? The reality is that she hadn't made a sale in five months prior to her termination. Along those lines, as I think Judge Briscoe or Judge Bagrec properly asked, was there any other reason why she was terminated? Well, yes, there was. Not only was she not performing the essential function of her job for almost half the time she was employed, yet drawing a six-figure salary, but as you point out, in December 2018, nearly a month before she was terminated, it was discovered when she was out that she was not inputting her contacts in Salesforce, which was a requirement of the company so that everybody could share information and not lose sales that were being generated. To make matters worse, once that was discovered and she was asked or directed to provide that contact information, she refused. These reasons, in and of themselves, do not create an inference of discrimination based on her termination that occurred on January 16, 2018. For a crime prevention case, why isn't it, again, viewing the evidence favorably of the plaintiff enough to find an inference that she was terminated based on gender, that Mr. Barbera, within six weeks of her termination, had said that she was doing well? The plaintiff has evidence through Ms. Landon that Mr. Winston had told her, roughly at the time that Mr. Barbera is terminated, in December, that she is not going to be terminated. She tells him that she has been able to land two sales, albeit it hadn't been conservated yet. There are these two individuals that, at least in Mr. Watt's case, had been there three months without a single sale, and it is a minimum burden for a crime prevention case. Why isn't all of that sufficient to lead a reasonable fact finder to find satisfaction of a crime prevention case? I think there's two reasons, Judge Bachrach. The first of which is, assuming for a minute, and dismissing for purposes of this response, the admissibility of Mr. Barbera's affidavit, I would suggest two things. One, Mr. Barbera only worked at the company for less than three months and had very limited experience or exposure with Ms. Landon. Additionally, as you point out, Mr. Watt's Winston had only worked there a totality of three months when Ms. Landon was fired, and Mr. Batum had only worked there about six weeks. Ms. Landon had had a year to prove herself. These gentlemen who are the alleged comparators, which is a different discussion, had just begun, and most critically, Your Honor, is in the time that they overlapped, meaning the five months from August 7 until January 16, and the three months that Mr. Watt's Winston worked there and the six weeks that Mr. Batum worked there, none of them made any sales. Nobody was selling. And as I mentioned to you a moment ago, which was, again, ignored by the other side, when Mr. Winston had this meeting in December and talked to Ms. Landon about her performance and that he wasn't intending to fire her, this was before she went on her sixth leave and she was insubordinate and was not following company protocols and not helping the business grow and sustain it. There's no evidence to suggest that these other two gentlemen that the other side wants to compare engaged in any of this behavior. The reality is that none of the three of them were making sales. And to answer your question about the prima facie case, as Judge Briscoe led off with at the outset of comments by the other side, the cases cited did get to the issue of pretext, but there are two other cases that I think are more instructive, Your Honor. As a matter of fact, this court in Abramson v. Multicommunity Diversified Services affirmed summary judgment in favor of defendant when the district court found the plaintiff failed to establish his prima facie case of discrimination, affirming without reference to defendant's profit reasons for their terminations, meaning they never got a pretext. This court affirmed that ruling. With respect to Ms. Landon's other claim of retaliation... I know we can't unwind this, but my, my, wouldn't this case have been simpler if the court would have said, okay, since the burden to establish prima facie case is so minimal, we'll just give you that. And you've spoken, and even opposing counsel has spoken, about activities by the plaintiff, which arguably would be pretty good reasons to fire her. So then you're in the world of pretext. And that's really the difficulty in our trying to pull this apart right now, is that it's presented as a case of prima facie, but we keep talking about pretext. It is a blurred line, Your Honor, and if I may address this in two parts. The first of which, just to finish my thought on the question you asked earlier, and that is, goes hand-in-hand with the second claim that Ms. Landon brought, and that's for retaliation. This court affirmed the district court's granted summary judgment at the prima facie stage of a retaliation claim, holding that the plaintiff failed to provide any evidence demonstrating a causal connection between her termination and the protected activity, thereby failing to establish a prima facie retaliation under Title VII. And that case that you're referring to? Lovi Angelo's Italian Foods. Next, moving to the more substantive question you asked about how this case could have been more simply resolved had the district court just jumped straight to pretext. It's a pointless question, though. Well, maybe not. It does strike me as pretty obvious here. Well, you're arguing this de novo, and I guess assuming arguendo that this court were to find the plaintiff did need her prima facie burden of proof, you should nonetheless affirm the district court's ruling of summary judgment in favor of defendants, and here's why. Assuming, again, arguendo, the plaintiff would have made her prima facie showing, the burden, as you know, would have shifted to defendants to articulate a legitimate non-discriminatory reason for Delta V's decision to terminate her. Delta V terminated Ms. Landon because the last five months of her employment, she hadn't made a single sale. She wasn't doing her job. As I mentioned a minute ago, it was also discovered she was violating company policy and was insubordinate when asked to rectify that situation. Let me interrupt you on your road down to pretext and go back to the prima facie case. The issue, and the only issue as I understand it, was whether her position did not remain open. That's the only issue on the prima facie case, right? I don't know if that's the only issue. I think the first issue is whether there was even an influence of discrimination. If we get past that, then we can talk about whether or not the position stayed open. You have the prima facie case. She's a member of a protected class, right? Yes, sir.  She was discharged. That leaves one last thing, and that is whether her position did not remain open. Isn't that the way we should look at the prima facie case? It's the way we look at the prima facie case, but the element that's being missed there is there needs to be an influence of discrimination before we look at that element. In this case, the position was open for a period of time. Let me talk about whether her position remained open. There was a person that was hired in May, correct? In April or May, yes, Your Honor. Did she fill that position? Partially. This individual did not have the same role or responsibility as Ms. Landon did and was not located in Colorado, but this person did support the company in a sales role. Does that mean that her position did not remain open then? She was filled in May. Ms. Landon's position did not remain open. As a matter of fact, no positions remained open, but Ms. Landon's position did not remain open, no. It was not replaced by somebody in her situation. Okay. If I may finish with Judge Briscoe's question about pretext, if, as you know, Delta articulated non-discriminatory reasons, then the ball would bounce back to Mr. Landon to show that Delta V's proffered reasons were inconsistent, implausible, incoherent, or contradictory and that they were unworthy of belief. If the district court were to reach this element, the result would have nonetheless been the same. In reaching that conclusion, it would have eliminated, as you mentioned, Judge Briscoe, a lot of the back and forth that we've discussed today and some of the elements of the prima facie case that are perhaps... But if we affirm for an alternative reason, don't we have to look at whether or not the parties have had an opportunity to address the question and also the district court? The question was actually addressed and briefed in both parties' briefings, Your Honor, and that is at... So those points are satisfied? This is not something we're just pulling off the shelf? No, Your Honor. Those elements have been satisfied. Good. And it is supported by the record at tele-brief pages 21 and 22. Of your answer brief. Yes, Your Honor. And it was also addressed in the underlying pleadings. When you say your pleadings, in your motion for summary, Judge? Yes, Your Honor. And if you were to apply this standard, Judge Briscoe, I believe the court would find, as it did in Johnson and Cobalt County, as you started this, and affirm on other grounds in favor of defendants, which is what we're asking you to do today. So that's what you're doing. You're saying affirm for an alternative reason? I'm suggesting based on... Or just affirm any way we possibly can. I'm suggesting that based on the evidence that was admissible and in the record this case should be decided, as the district court did, based on the failure to establish a prior conviction case. However, assuming that is not the court's inclination, it would nonetheless find the same conclusion as it did in Wells in applying pretext. So if there's nothing further, I'll finish. Thank you, Bill. Thank you all for your time. All right. Thank you very much. Nikki, I think the appellant's unfortunately out of time. Is that correct? All right. Thank you very much, counsel. This matter is submitted.